**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION**

| | |
|---|---|
| RICARDO RODRIGUEZ,  Plaintiff,  v.  STATE OF UTAH et al.,  Defendants. | **MEMORANDUM DECISION AND ORDER**  Case No. 2:07-CV-988 DAK  District Judge Dale A. Kimball  Magistrate Judge Brooke Wells |

Plaintiff, Ricardo Rodriguez, an inmate at the Utah State Prison, filed this *pro se* civil rights suit under 42 U.S.C. § 1983. *See* 42 U.S.C.A. § 1983 (West 2009). Plaintiff was allowed to proceed *in forma pauperis* under 28 U.S.C. § 1915(b). *See* 28 *id.* 1915. This case is now before the Court for screening under 28 U.S.C. § 1915(e) and for consideration of Plaintiff's motions for preliminary injunctive relief.

## ANALYSIS

### I. Screening Standard

Under 28 U.S.C. § 1915(e)(2)(B), a court shall dismiss any claims in a complaint filed *in forma pauperis* if they are frivolous, malicious or fail to state a claim upon which relief can be granted. "Dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the

plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 806 (10th Cir. 1999). For screening purposes, the Court "presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).

Because Plaintiff is proceeding pro se the Court must construe his pleadings liberally and hold them to a less stringent standard than formal pleadings drafted by lawyers. *Id.* However, "[t]he broad reading of the plaintiff's complaint does not relieve [him] of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Id.* While Plaintiff need not describe every fact in specific detail, "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Id.*

To state a viable claim "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007)). "Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative

level." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). And, "the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for [his] claims." *Ridge at Red Hawk, L.L. C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). The "requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Robbins*, 519 F.3d at 1248.

## II. Plaintiff's Allegations

Plaintiff alleges that in 1988 he was stabbed and severely beaten while living in Missouri. Plaintiff sustained serious injuries during the attack, including a knife lodged in his brain through his right eye socket, skull fractures, and multiple head contusions. Plaintiff states that due to his injuries he suffers from partial paralysis on the left side of his body, mental disorders including frontal lobe syndrome, and partial blindness in his right eye. Plaintiff entered the Utah State Prison in 1991. Plaintiff was paroled for short periods in 1993 and 1994 but returned to prison after being convicted of a sex offense. Plaintiff has remained in prison since that time and has a parole hearing scheduled for June 2012.

In 1997 Plaintiff requested admission to the Sex Offender Treatment Program (SOTP) and was placed on the waiting list. Plaintiff alleges that prison policies at that time stated that once an inmate completed SOTP he would receive a special attention hearing before the parole board, would be eligible for an earlier parole date, and could complete after-care while on parole.  Plaintiff states that in 1998, due to a backlog of inmates nearing parole and still awaiting admission to SOTP, the written policy was revoked and a new unwritten policy was adopted under which inmates could only be referred to SOTP if they were within two years of being eligible for parole.  Based on the new policy Plaintiff was removed from the waiting list and told that he would be "flagged" for SOTP by the parole board when he was within two years of his parole hearing.  Plaintiff filed grievances asserting that he was being forced to serve more prison time because he could not be admitted to SOTP.  In 2004 Plaintiff received a grievance response from Ron Sanchez stating:

> Inmate Rodriguez is on the tracking list for
> SOTP; he has agreed to accept it when
> offered.  Inmate Rodriguez has not been
> flagged by the Board for SOTP, only an
> alienist evaluation.  Because the inmate is
> on the list for SOTP he would be map
> compliant and should not lose any privileges.
> Inmate Rodriguez is not being kept in prison
> because of lack of SOTP it is due to the
> Board believing he needs to serve more time
> before they recommend SOTP, because the Board
> only recommends SOTP to those offenders who
> are getting close to parole.  **SOTP is only**

      **offered to those individuals who the Board has flagged for treatment**.

(Compl. at 7 (emphasis in original).)  In November 2006 Plaintiff received word that he had been flagged by the parole board for SOTP and was again on the waiting list.  However, in March 2007 Plaintiff was involved in an incident at his job in the Central Utah Correctional Facility (CUCF) culinary unit.  Based on the in incident Plaintiff was terminated from his employment by his supervisor, Laree Mecham.[1]  Plaintiff states that this "led to emotional distress that resulted in [Plaintiff] cutting on his wrists in a suicide attempt."  (Compl. at 8.)  Plaintiff subsequently faced disciplinary charges for the culinary incident and was transferred to the Special Management section at the Utah State Prison's Oquirrh III unit.  Shortly thereafter Plaintiff was again removed from the SOTP waiting list by Michael Robinson.

    Following his transfer Plaintiff "began requesting mental health services to address his frontal lobe syndrome and post traumatic stress disorder."  (Compl. at 8.)  Plaintiff also requested medical services to address his disabilities including pain in his eye, headaches, and pain in his left arm and leg.

---

[1] Plaintiff does not clearly explain the nature of the incident.  However, he alleges that it occurred because Mecham "enforc[ed] a harsher and more restrictive work condition with callous disregard to Plaintiff's disabilities."  (Compl. at 3.)

Plaintiff states that he was examined by Kim Palmer, a mental health therapist at Oquirrh III, who found that Plaintiff had a traumatic brain injury. Plaintiff was also examined by a physician's assistant who noted "signs of physical impairment." Despite these findings, however, Plaintiff states that no recommendation was made for additional treatment such as ongoing mental health evaluations, counseling and/or physical therapy. Plaintiff also requested accommodations under the Americans with Disabilities Act (ADA) but his requests were denied. Plaintiff generally alleges that due to the lack of treatment he has experienced pain and suffering and emotional distress.

### III. Sufficiency of Plaintiff's Complaint

Plaintiff's Complaint is divided into thirteen separate "counts," however, many of these claims are redundant and appear to be merely the same claims dressed up in a variety of different legal theories. Based on a thorough review of Plaintiff's Complaint the Court finds that Plaintiff alleges four basic claims: (1) Eighth Amendment claim based on denial of medical and mental health care; (2) Due Process claim based on removal from the Sex Offender Treatment Program (SOTP) waiting list; (3) Due Process claim based on termination from prison employment and housing transfer; and, (4) ADA claim based on denial of accommodations for alleged physical and mental disabilities.

Plaintiff's Complaint names the following defendants: State of Utah; Utah Department of Corrections (UDC); Utah Board of Pardons and Parole; Michael Robinson, SOTP; Ron Sanchez, SOTP; Laree Mecham, CUCF culinary staff; Lt. David Rasmussen, Offender Management Review (OMR); Jeff Shoell, OMR; James Gull, OMR; Jack Ford, Dir. Public Affairs (USP); and, Larry Bussio, Deputy Warden (USP).  Plaintiff seeks declaratory and injunctive relief as well as compensatory and punitive damages.

### A. Eighth Amendment: Medical/Mental Health Care

In *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285 (1976), the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' *Greg v. Georgia*, 428 U.S. 153, 96 S. Ct. 2909 (1976), proscribed by the Eighth Amendment."  *Estelle*, 429 U.S. at 104.  "Deliberate indifference involves both an objective and a subjective component." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000).  The objective component is met if the deprivation is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970 (1994).  A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th

Cir. 1999).

The subjective component is met only if a prison official "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. Allegations of mere negligence in diagnosing or treating a medical condition, *Estelle*, 429 U.S. at 105, or "inadvertent failure to provide adequate medical care," *Riddle v. Mondragon*, 83 F.3d 1197, 1203 (10th Cir. 1996), are insufficient to state a claim under the Eighth Amendment.

Applying the above standards, the Court finds that Plaintiff's allegations regarding denial of medical and mental health care are insufficient to state a plausible Eighth Amendment claim. First, Plaintiff does not allege that he was diagnosed with a serious medical or mental health condition which requires ongoing treatment. The underlying physical injuries alleged by Plaintiff occurred nearly twenty years prior to his filing the present lawsuit. Although Plaintiff states that as recently as 2007 he was found to have a TBI and signs of physical impairment stemming from the attack nearly two decades ago, Plaintiff has never been diagnosed as requiring ongoing medical treatment, nor does Plaintiff allege symptoms which would make it obvious even to a lay person that Plaintiff requires such treatment. In essence, Plaintiff's allegations show only a

difference of opinion regarding the severity of his current condition and the need for ongoing treatment.  It is well established, however, that such a "mere difference of opinion" does not support a claim of cruel and unusual punishment.  *See Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980).

Second, even assuming Plaintiff's present condition is sufficiently serious to warrant ongoing treatment of some kind, Plaintiff's allegations do not show that Defendants were deliberately indifferent to his medical needs.  Plaintiff admits that following his suicide attempt in 2007 he was promptly reevaluated by qualified medical and mental health personnel who determined no ongoing treatment was necessary.  Even assuming that determination was negligent, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner."  *Estelle*, 429 U.S. at 106.  Instead, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Ferranti v. Moran*, 618 F.2d 888, 891 (1st Cir. 1980).

Thus, the Court concludes that Plaintiff's allegations regarding denial of medical care are insufficient to state a claim on which relief can be granted.

## B. Due Process: SOTP

Plaintiff asserts that the prison's policy change regarding the availability of SOTP, and Plaintiff's subsequent removal from the SOTP waiting list without a hearing, violated Plaintiff's right to due process under the Fourteenth Amendment. Although Plaintiff offers several convoluted legal theories in support of this claim, the essence of his claim appears to be that he has a constitutional liberty interest in admission to SOTP and, therefore, he was entitled to some form of due process before being removed from the waiting list. Plaintiff also asserts that he was entitled to due process because his removal from the SOTP waiting list may negatively impact his parole date.

"The Due Process Clause guarantees due process only when a person is to be deprived of life, liberty, or property." *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994). Thus, the first step in evaluating any due process claim is to determine whether the plaintiff's allegations implicate liberty or property interests protected under the U.S. Constitution. The Supreme Court has recognized that in the prison context "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." *Sandin v. Conner,* 515 U.S. 472, 483, 115 S. Ct. 2293, 2300 (1995). However, such interests are generally limited to freedom from restraints which

pose an "atypical or significant hardship on the inmate in relation to the ordinary incidents of prison life," or threaten to lengthen his term of confinement. *Id.* at 485-87.

It is well settled that prisoners do not have a substantive due process right to participate in rehabilitation programs such as SOTP. "Courts have not accepted the claim that an inmate has a constitutional right to any educational, or other programs, and there has never been a recognized constitutional right of rehabilitation for prisoners." *Termunde v. Cook*, 684 F. Supp. 255, 259 (D. Utah 1988); *see also Johnson v. Galli*, 596 F. Supp. 135, 159 (D. Nev. 1984) ("There is no constitutional right to rehabilitation; idleness and a lack of programs do not violate the Constitution."). Moreover, enrollment in such programs cannot be described as a constitutionally protected liberty or property interest because "no fixed set of criteria entitles anyone to admission, and exclusion leaves the prisoner with the normal attributes of confinement." *Stanley v. Litscher*, 213 F.3d 340, 342 (7th Cir. 2000).

Plaintiff also has not shown that removal from the SOTP waiting list implicated the Fourteenth Amendment's procedural due process guarantee. Specifically, Plaintiff does not allege that removal from the waiting list imposed an "atypical or significant" hardship on him in relation to the ordinary

incidents of prison life.  In fact, it does not appear that removal from the waiting list directly caused any change in Plaintiff's conditions of confinement.[2]  However, as discussed in greater detail below, even if Plaintiff's removal from the waiting list did contribute to his reclassification and housing transfer, those sanctions were not sufficiently harsh to implicate due process protections.

Nor has Plaintiff shown that his reclassification or removal from the SOTP waiting list threatened to lengthen his term of confinement.  Even assuming Plaintiff's removal from the waiting list results in postponement of his parole hearing, Plaintiff's term of confinement will remain unchanged.[3]  Under Utah's indeterminate sentencing scheme convicts are sentenced to a statutorily prescribed range of years, with the upper limit being the maximum permissible term of confinement, and it is then left to the parole board to determine whether parole should be granted prior to completion of the legally imposed maximum

---

[2] Although Plaintiff states that after being terminated from his job he was moved to the "idle" housing unit, this transfer apparently resulted from Plaintiff's changed employment status not his removal from the SOTP waiting list.

[3] Plaintiff does not allege that he was imprisoned beyond the upper limit of his sentence, nor does he specifically allege that his parole hearing date was changed based on his removal from the SOTP waiting list or transfer to Oquirrh III.

sentence. The Supreme Court has explicitly stated that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7, 99 S. Ct. 2100, 2104 (1979). Moreover, Utah's parole statutes do not create a liberty interest entitling prisoners to federal constitutional protection. *See Malek v. Haun*, 26 F.3d 1013, 1016 (10th Cir. 1994). Thus, Plaintiff's assertion that exclusion from SOTP may interfere with his chances for parole is insufficient to state a due process claim.

In sum, because Plaintiff's removal from the SOTP waiting list did not deprive him of any liberty to which he was entitled under the federal Constitution, no particular process was constitutionally due or required, regardless of prison regulations. *See Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994). Thus, the Court concludes that Plaintiff's allegations regarding removal from the SOTP waiting list are insufficient to state a constitutional due process claim.

### C. Due Process: Classification and Housing Assignment

The Court now turns to Plaintiff's claim that he was denied due process with regard to his job termination, reclassification and housing change. It is well established that prisoners have no right under the Federal Constitution to any specific

13

classification or housing assignment. *See Hewitt v. Helms*, 459 U.S. 460, 468, 103 S. Ct. 864, 869 (1983); *Levoy v. Mills*, 788 F.2d 1437, 1440 (10th Cir. 1986). "Changing an inmate's prison classification ordinarily does not deprive him of liberty, because he is not entitled to a particular degree of liberty in prison." *Templeman*, 16 F.3d at 369. As noted previously, a housing transfer or reclassification will implicate a protected liberty interest only where it imposes an "atypical or significant hardship on the inmate in relation to the ordinary incidents of prison life," *Sandin v. Conner*, 515 U.S. 472, 485, 115 S. Ct. 2293, 2301 (1995), or threatens to lengthen his term of confinement, *id.* at 487.

Plaintiff does not allege specific facts showing that the regime he faced in the Oquirrh III special management unit amounted to an atypical or significant hardship in relation to the ordinary incidents of prison life. Although Plaintiff alleges that inmates in the special management unit "are subjected to lesser privileges" than inmates in other units, he states that these conditions apply to all inmates "generally labeled 'idle'." (Compl. at 9.) Plaintiff also states that he requested to be moved to a "programming" unit where he could receive more privileges but was not accepted due to his past behavior.

Plaintiff's allegations do not show that the conditions he experienced in the "idle unit" were outside "the normal limits or range of custody which [his] conviction . . . authorized the State to impose." *Meachum v. Fano*, 427 U.S. 215, 225, 96 S. Ct. 2532, 2538 (1976); *see also Sandin*, 515 U.S. at 487. Nor does Plaintiff allege any facts showing that his transfer had any effect on his term of confinement. Accordingly, the Court finds that Plaintiff's allegations are not sufficient to show that Plaintiff's due process rights were violated with regard to his reclassification or housing transfer.

Plaintiff also cannot show that his job termination was unconstitutional. Although the circumstances surrounding Plaintiff's termination are unclear from the Complaint, there is no way his termination could give rise to a viable due process claim. As noted previously, inmates do not have a constitutional right to participate in rehabilitation or employment programs, therefore, no process is constitutionally due or required before terminating an inmate from such programs. *See Termunde v. Cook*, 684 F. Supp. 255, 259 (D. Utah 1988).

Thus, the Court concludes that Plaintiff's allegations regarding his job termination, reclassification, and housing transfer are insufficient to state a constitutional due process claim.

### D. Americans With Disabilities Act Claim

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (West 2009). To state a claim under Title II, a plaintiff must allege that "(1) he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability." *Robertson v. Las Animas County Sheriff's Dep't*, 500 F.3d 1185, 1193 (10th Cir. 2007). Moreover, a "disability" under the ADA requires more than a diagnosis of mental or physical impairment, instead, it requires either an actual or perceived substantial limitation in a major life activity. *Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 198, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002).

The Tenth Circuit is among a number of circuits that hold that the ADA does not provide a remedy for medical malpractice. Instead, to state a claim under the ADA a plaintiff must plausibly allege that he was "otherwise qualified" for the benefits he sought and that he was denied those "solely by reason

of disability." *See, e.g.*, *Johnson by Johnson v. Thompson*, 971 F.2d 1487, 1492 (10th Cir. 1992), cert. denied, 507 U.S. 910 (1993).

In *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1144 (10th Cir.2005), the Tenth Circuit explained that "the term 'otherwise qualified' cannot ordinarily be applied in the comparatively fluid context of medical treatment decisions without distorting its plain meaning." *Fitzgerald* involved a claim by a plaintiff who fractured his femur and was seen by a physician who recommended that one treatment option was "to do nothing." *Fitzgerald*, 403 F.3d at 1137. The plaintiff then attempted to hold the state department of corrections liable under the ADA for following the doctor's advice. Id. Given this context, the Tenth Circuit concluded that "[t]hese are the sort of purely medical decisions that we have held do not ordinarily fall within the scope of the ADA or the Rehabilitation Act." Id. at 1144.

Plaintiff's present claim is essentially identical to the claim presented in *Fitzgerald*. Plaintiff asserts that he was evaluated by qualified medical personnel who diagnosed his condition and determined that no ongoing treatment was warranted. Even if this determination was negligent, there is no indication that it was anything other than a purely medical decision.

Plaintiff does not plausibly allege that he was denied treatment "because of" his disability.  Nor does he allege that other inmates who are not disabled have received the type of treatment he is requesting.  As the *Fitzgerald* court noted, a plaintiff is not "otherwise qualified" for purposes of the ADA where the alleged disability itself is the very reason the plaintiff is seeking treatment in the first place.  *Id.* at 1144.

Thus, the Court concludes that Plaintiff's allegations are insufficient to state a claim for relief under the ADA.

### IV. Motions for Injunctive Relief

Plaintiff has filed motions for a preliminary injunction and/or temporary restraining order requiring Defendants to admit Plaintiff into SOTP or else justify their reasons for not doing so.  Plaintiff's motions appear to be simply attempts to hasten the relief sought in his Complaint.

A preliminary injunction is an extraordinary and drastic remedy which should not be granted unless the right to relief is clear and unequivocal.  *SCFC ILC, Inc. v. VISA USA, Inc.*, 936 F.2d 1096, 1098 (10th Cir. 1991).  To obtain a preliminary injunction a moving party must establish that:

> (1) the party will suffer irreparable injury unless the injunction issues; (2) the threatened injury to the moving party outweighs whatever damage the proposed injunction may cause the opposing party; (3)

> the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood that the moving party will eventually prevail on the merits.

*Resolution Trust Corp. v. Cruce*, 972 F.2d 1195, 1198 (10th Cir. 1992).

Plaintiff has not satisfied the high standard required to obtain a temporary restraining order or preliminary injunction. As previously discussed, Plaintiff cannot show that his removal from the SOTP waiting list amounts to a constitutional violation or is likely to cause him irreparable injury. Moreover, having concluded that Plaintiff's Complaint is subject to dismissal for failure to state a claim, Plaintiff cannot show a substantial likelihood that he will eventually prevail on the merits of his claims. Thus, Plaintiff's motions for injunctive relief are denied.

**ORDER**

Based on the foregoing, **IT IS HEREBY ORDERED** that Plaintiff's motions for injunctive relief are **DENIED** and Plaintiff's Complaint is **DISMISSED** under 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim on which relief can be granted.

DATED this 13th day of March, 2009.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge